TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
ALEXANDER B. SCHWAB (Cal. Bar No. 283421)
Assistant United States Attorney
Major Frauds Section
BENEDETTO L. BALDING (Cal. Bar No. 244508)
Assistant United States Attorney
Deputy Chief, International Narcotics,
 Money Laundering, and Racketeering Section
     1100/1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-1259/2274
     Facsimile: (213) 894-0141
     E-mail:    alexander.schwab@usdoj.gov
                benedetto.balding@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 2:18-49-ODW-1 |
|---|---|
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT JOSE GUILLERMO GROSSO GAMEZ |
| v. | |
| JOSE GUILLERMO GROSSO GAMEZ, | |
| Defendant. | |

1.   This constitutes the plea agreement between Jose Guillermo Grosso Gamez ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authority.

DEFENDANT'S OBLIGATIONS

2.   Defendant agrees to:

a.   At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to lesser included offenses within counts one, three, and four of the indictment in United States v. Jose Guillermo Grosso Gamez et al., CR No. 2:18-cr-00049-ODW-1, which charge defendant with conspiracy to distribute and possess with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(B)(viii) (count one); distribution of methamphetamine for purpose of unlawful importation, in violation of 21 U.S.C. §§ 959(a), 960(a)(3), (b)(2)(H); and possession of methamphetamine on board a United States-registered aircraft with intent to distribute, in violation of 21 U.S.C. §§ 959(c), 960(a)(3), (b)(2)(H), respectively.

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("USSG" or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.   Pay the applicable special assessments at or before the time of sentencing unless defendant lacks the ability to pay and prior to sentencing submits a completed financial statement on a form to be provided by the USAO.

1                        THE USAO'S OBLIGATIONS

2       3.   The USAO agrees to:

3            a.   Not contest facts agreed to in this agreement.

4            b.   Abide by all agreements regarding sentencing contained

5  in this agreement.

6            c.   At the time of sentencing, move to dismiss the

7  remaining counts of the indictment as against defendant.  Defendant

8  agrees, however, that at the time of sentencing the Court may

9  consider any dismissed charges in determining the applicable

10 Sentencing Guidelines range, the propriety and extent of any

11 departure from that range, and the sentence to be imposed.

12           d.   At the time of sentencing, provided that defendant

13 demonstrates an acceptance of responsibility for the offense up to

14 and including the time of sentencing, recommend a two-level reduction

15 in the applicable Sentencing Guidelines offense level, pursuant to

16 USSG § 3E1.1, and recommend and, if necessary, move for an additional

17 one-level reduction if available under that section.

18           e.   Recommend that defendant be sentenced to a term of

19 imprisonment no higher than the low end of the applicable Sentencing

20 Guidelines range, provided that the offense level used by the Court

21 to determine that range is 35 or higher.  For purposes of this

22 agreement, the low end of the Sentencing Guidelines range is that

23 defined by the Sentencing Table in USSG Chapter 5, Part A.

24                       NATURE OF THE OFFENSES

25      4.   Defendant understands that for defendant to be guilty of

26 the lesser included offense charged within count one, that is,

27 conspiracy to distribute and to possess with intent to distribute

28 methamphetamine, in violation of 21 U.S.C. § 846, the following must

be true: (1) there was an agreement between two or more persons to distribute and to possess with intent to distribute methamphetamine; and (2) defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose.

5.    Defendant understands that for defendant to be subject to the statutory maximum and statutory minimum sentences set forth below as to the lesser included offense charged within count one, the government must prove beyond a reasonable doubt that the conspiracy in which defendant participated involved at least fifty grams of a mixture or substance containing a detectible amount of methamphetamine.  Defendant admits that he knowingly and intentionally participated in a conspiracy involving at least fifty grams of a mixture or substance containing a detectible amount of methamphetamine.

6.    Defendant further understands that the law may require the government to prove beyond a reasonable doubt that the type and quantity of the charged controlled substance fell within the scope of defendant's agreement and were reasonably foreseeable to defendant. Defendant admits that the distribution and possession with intent to distribute at least fifty grams of a mixture or substance containing a detectible amount of methamphetamine fell within the scope of defendant's agreement and was reasonably foreseeable to him.

7.    Defendant understands that for defendant to be guilty of the lesser included offense charged within count three, that is, distribution of methamphetamine for purpose of unlawful importation, in violation of 21 U.S.C. §§ 959(a), 960(a)(3), (b)(2)(H), the following must be true: (1) defendant distributed methamphetamine outside the United States; and (2) defendant either intended that the

methamphetamine be unlawfully brought into the United States or knew that the methamphetamine would be unlawfully brought into the United States.

8.    Defendant understands that for defendant to be subject to the statutory maximum and statutory minimum sentences set forth below as to the lesser included offense charged within count three, the government must prove beyond a reasonable doubt that defendant distributed at least fifty grams of a mixture or substance containing a detectible amount of methamphetamine.  Defendant admits that defendant, in fact, distributed at least fifty grams of a mixture or substance containing a detectible amount of methamphetamine.

9.    Defendant understands that for defendant to be guilty of the lesser included offense charged within count four, that is, possession of methamphetamine on board a United States-registered aircraft with intent to distribute, in violation of 21 U.S.C. §§ 959(c), 960(a)(3), (b)(2)(H), the following must be true: (1) defendant knowingly possessed methamphetamine on board an aircraft registered in the United States or owned by a United States citizen; and (2) defendant possessed the methamphetamine with the intent to distribute it to another person.

10.    Defendant understands that for defendant to be subject to the statutory maximum and statutory minimum sentences set forth below as to the lesser included offense charged within count four, the government must prove beyond a reasonable doubt that defendant possessed with intent to distribute at least fifty grams of a mixture or substance containing a detectible amount of methamphetamine. Defendant admits that defendant, in fact, possessed with intent to

distribute at least fifty grams of a mixture or substance containing a detectible amount of methamphetamine.

11. Defendant understands that defendant may also be guilty of the lesser included offenses charged within counts one, three, and four even if the defendant did not personally commit the act(s) constituting the crime if the defendant willfully caused an act to be done that if directly performed by him would be an offense against the United States, and that a defendant who puts in motion or causes the commission of an indispensable element of an offense may be found guilty as if he had committed that element himself.

PENALTIES

12. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 21 U.S.C. § 846, as charged in the lesser included offense in count one of the Indictment, pursuant to 21 U.S.C. § 841(b)(1)(B)(viii), is: 40 years of imprisonment; a lifetime period of supervised release; a fine of $5,000,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

13. Defendant understands that the statutory mandatory minimum sentence that the Court must impose for a violation of 21 U.S.C. § 846, as charged in the lesser included offense in count one of the Indictment, pursuant to 21 U.S.C. § 841(b)(1)(B)(viii), is: 5 years' imprisonment, followed by a four-year period of supervised release, and a mandatory special assessment of $100.

14. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 21 U.S.C. §§ 959(a) and 960(a)(3), as charged in the lesser included offense in count three

6

of the Indictment, pursuant to 21 U.S.C. § 960(b)(2)(H), is: 40 years of imprisonment; a lifetime period of supervised release; a fine of $5,000,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

15. Defendant understands that the statutory mandatory minimum sentence that the Court must impose for a violation of 21 U.S.C. §§ 959(a) and 960(a)(3), as charged in the lesser included offense in count three of the Indictment, pursuant to 21 U.S.C. § 960(b)(2)(H), is: 5 years' imprisonment, followed by a four-year period of supervised release, and a mandatory special assessment of $100.

16. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 21 U.S.C. §§ 959(c) and 960(a)(3), as charged in the lesser included offense in count three of the Indictment, pursuant to 21 U.S.C. § 960(b)(2)(H), is: 40 years of imprisonment; a lifetime period of supervised release; a fine of $5,000,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

17. Defendant understands that the statutory mandatory minimum sentence that the Court must impose for a violation of 21 U.S.C. §§ 959(c) and 960(a)(3), as charged in the lesser included offense in count three of the Indictment, pursuant to 21 U.S.C. § 960(b)(2)(H), is: 5 years' imprisonment, followed by a four-year period of supervised release, and a mandatory special assessment of $100.

18. Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: 120 years' imprisonment; a lifetime period of supervised release; a

fine of $15,000,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $300.

19. Defendant understands that under 21 U.S.C. § 862a, defendant will not be eligible for assistance under state programs funded under the Social Security Act or Federal Food Stamp Act or for federal food stamp program benefits, and that any such benefits or assistance received by defendant's family members will be reduced to reflect defendant's ineligibility.

20. Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release.

21. Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition. Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated

collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

22.   Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his conviction on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his pleas may entail, even if the consequence is automatic removal from the United States.

<u>FACTUAL BASIS</u>

23.   Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support pleas of guilty to the charges described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 25 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

Beginning on an unknown date, and continuing to on or about January 31, 2018, in Los Angeles and San Bernardino Counties, within the Central District of California, and elsewhere throughout the world, defendant conspired with others to knowingly and intentionally distribute and possess with intent to distribute at least 50 grams of a mixture or substance containing a detectable amount of methamphetamine.

As a member of the conspiracy, defendant coordinated logistics for trafficking methamphetamine to locations all over the world, particularly to destinations in East Asia.  In particular, defendant arranged for bulk methamphetamine to be secreted in various industrial or technical equipment in an effort to hide it from detection by law enforcement and various other government officials. Along with other members of the conspiracy, defendant made frequent use of BlackBerry Messenger ("BBM") to communicate with co-conspirators.  Defendant used a variety of BBM screen names during his participation in the conspiracy, including variations of the names "Greenhills" and "Martinez Asociados."

On or about December 5, 2013, defendant entered the Philippines using a passport bearing his photograph but the false name Eduardo de la Vega-Gonzalez.  While in the Philippines, defendant transported five suitcases containing methamphetamine to a co-conspirator at a hotel room in Manila on or about December 12, 2013.  On December 25, 2013, the five suitcases were seized by law enforcement from a rooster farm in the Philippines owned by another co-conspirator, who was a United States citizen residing in Ontario, California, and who, while in Ontario, coordinated this drug transaction with other members of the conspiracy.  The suitcases contained a total of

approximately 84 kilograms of methamphetamine with a purity between 98.2 and 98.5 percent.

On or about February 21, 2014, law enforcement seized over $500,000 in bulk cash drug proceeds in Los Angeles, California, which defendant's co-conspirators were attempting to transport from Los Angeles to co-conspirators elsewhere in furtherance of the conspiracy.  Additionally, on or about June 30, 2014, in Los Angeles, California, law enforcement discovered a methamphetamine conversion facility containing chemicals, solvents, materials, and lab waste consistent with converting liquid methamphetamine to crystal methamphetamine that was maintained by defendant's co-conspirators in furtherance of the conspiracy.  Although defendant lacked direct involvement in or knowledge of the events discussed in this paragraph, such events were within the scope of the conspiracy and were reasonably foreseeable actions taken in the course of the conspiracy.

In various BBM communications in the fall of 2014, defendant coordinated with co-conspirators to attempt to transport bulk methamphetamine to Manila, Philippines, from the Port of Manzanillo in Mexico.  Using BBM, defendant informed co-conspirators that documentation for the shipment should reflect that it contained a "Mobile Ore Crusher," sent a photograph of an industrial ore crusher, provided shipping documentation, and provided updates concerning the dismantling of the ore crusher in a warehouse so that it could be filled with methamphetamine.  On October 18, 2014, officials at the Port of Manzanillo identified the mobile ore crusher and found roughly 183 kilograms of methamphetamine inside one of the giant crusher wheels.

In the fall of 2017, defendant and a co-conspirator met in Bangkok, Thailand, with individuals they believed to be drug traffickers but who were, in fact, undercover law enforcement agents. During that meeting, defendant and the co-conspirator agreed to make shipments of bulk methamphetamine to Australia for further distribution. On January 3, 2018, defendant communicated electronically with undercover law enforcement agents to inform them that a methamphetamine shipment had been sent, having caused the methamphetamine shipment to be sent from a location in Mexico. That same day, law enforcement discovered the shipment in Memphis, Tennessee. The shipment contained 119.79 kilograms of methamphetamine (which lab testing determined to have a purity of approximately 98 percent) concealed within computer server boxes. The aircraft on which the methamphetamine had been transported to the United States was registered in the United States and owned by a U.S. corporation, and defendant willfully caused the persons on board the aircraft to possess the methamphetamine shipment concealed on board. Defendant was later transferred to the United States via extradition, first arriving at a place within the Central District of California.

SENTENCING FACTORS

24. Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a). Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the

Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate between the mandatory minimum and the maximum set by statute for the crime of conviction.

25. Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

Base Offense Level:                    38   USSG § 2D1.1 (a)(5), (c)(1)

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.  Defendant understands that defendant's offense level could be increased if defendant is a career offender under USSG §§ 4B1.1 and 4B1.2.  If defendant's offense level is so altered, defendant and the USAO will not be bound by the agreement to Sentencing Guideline factors set forth above.

26. Defendant and the USAO agree that:

a.    Defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offenses; and

b.    The offenses did not result in death or serious bodily injury to any person.

27. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

28. Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

1

## WAIVER OF CONSTITUTIONAL RIGHTS

2      29.   Defendant understands that by pleading guilty, defendant

3  gives up the following rights:

4           a.   The right to persist in a plea of not guilty.

5           b.   The right to a speedy and public trial by jury.

6           c.   The right to be represented by counsel -- and if

7  necessary have the Court appoint counsel -- at trial.  Defendant

8  understands, however, that, defendant retains the right to be

9  represented by counsel -- and if necessary have the Court appoint

10  counsel -- at every other stage of the proceeding.

11          d.   The right to be presumed innocent and to have the

12  burden of proof placed on the government to prove defendant guilty

13  beyond a reasonable doubt.

14          e.   The right to confront and cross-examine witnesses

15  against defendant.

16          f.   The right to testify and to present evidence in

17  opposition to the charges, including the right to compel the

18  attendance of witnesses to testify.

19          g.   The right not to be compelled to testify, and, if

20  defendant chose not to testify or present evidence, to have that

21  choice not be used against defendant.

22          h.   Any and all rights to pursue any affirmative defenses,

23  Fourth Amendment or Fifth Amendment claims, and other pretrial

24  motions that have been filed or could be filed.

25                 ## WAIVER OF APPEAL OF CONVICTION

26      30.   Defendant understands that, with the exception of an appeal

27  based on a claim that defendant's guilty pleas were involuntary, by

28  pleading guilty defendant is waiving and giving up any right to

14

appeal defendant's conviction on the offenses to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

31.  Defendant agrees that, provided the Court imposes a total term of imprisonment within or below the Sentencing Guidelines range corresponding to an offense level of 35 and the criminal history category calculated by the Court, subject to any applicable mandatory minimum, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (f) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

32.  Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an

explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction. Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

33. The USAO agrees that, provided (a) all portions of the sentence are at or above the statutory minimum and at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment within or above the Sentencing Guidelines range corresponding to an offense level of 35 and the criminal history category calculated by the Court, subject to any applicable mandatory minimum, the USAO gives up its right to appeal any portion of the sentence.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEAS</u>

34. Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing any of defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy

1 trial claim with respect to any such action, except to the extent

2 that such defenses existed as of the date of defendant's signing this

3 agreement.

4 RESULT OF VACATUR, REVERSAL OR SET-ASIDE

5     35.  Defendant agrees that if any count of conviction is

6 vacated, reversed, or set aside, the USAO may: (a) ask the Court to

7 resentence defendant on any remaining counts of conviction, with both

8 the USAO and defendant being released from any stipulations regarding

9 sentencing contained in this agreement, (b) ask the Court to void the

10 entire plea agreement and vacate defendant's guilty pleas on any

11 remaining counts of conviction, with both the USAO and defendant

12 being released from all their obligations under this agreement, or

13 (c) leave defendant's remaining convictions, sentence, and plea

14 agreement intact.  Defendant agrees that the choice among these three

15 options rests in the exclusive discretion of the USAO.

16 EFFECTIVE DATE OF AGREEMENT

17     36.  This agreement is effective upon signature and execution of

18 all required certifications by defendant, defendant's counsel, and an

19 Assistant United States Attorney.

20 BREACH OF AGREEMENT

21     37.  Defendant agrees that if defendant, at any time after the

22 effective date of this agreement, knowingly violates or fails to

23 perform any of defendant's obligations under this agreement ("a

24 breach"), the USAO may declare this agreement breached.  All of

25 defendant's obligations are material, a single breach of this

26 agreement is sufficient for the USAO to declare a breach, and

27 defendant shall not be deemed to have cured a breach without the

28 express agreement of the USAO in writing.  If the USAO declares this

agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

38. Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a. Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b. Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c. Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

1

2

<u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</u>

<u>OFFICE NOT PARTIES</u>

3      39.  Defendant understands that the Court and the United States

4   Probation and Pretrial Services Office are not parties to this

5   agreement and need not accept any of the USAO's sentencing

6   recommendations or the parties' agreements to facts or sentencing

7   factors.

8      40.  Defendant understands that both defendant and the USAO are

9   free to: (a) supplement the facts by supplying relevant information

10   to the United States Probation and Pretrial Services Office and the

11   Court, (b) correct any and all factual misstatements relating to the

12   Court's Sentencing Guidelines calculations and determination of

13   sentence, and (c) argue on appeal and collateral review that the

14   Court's Sentencing Guidelines calculations and the sentence it

15   chooses to impose are not error, although each party agrees to

16   maintain its view that the calculations in paragraph 25 are

17   consistent with the facts of this case.  While this paragraph permits

18   both the USAO and defendant to submit full and complete factual

19   information to the United States Probation and Pretrial Services

20   Office and the Court, even if that factual information may be viewed

21   as inconsistent with the facts agreed to in this agreement, this

22   paragraph does not affect defendant's and the USAO's obligations not

23   to contest the facts agreed to in this agreement.

24      41.  Defendant understands that even if the Court ignores any

25   sentencing recommendation, finds facts or reaches conclusions

26   different from those agreed to, and/or imposes any sentence up to the

27   maximum established by statute, defendant cannot, for that reason,

28   withdraw defendant's guilty plea, and defendant will remain bound to

1  fulfill all defendant's obligations under this agreement.  Defendant

2  understands that no one -- not the prosecutor, defendant's attorney,

3  or the Court -- can make a binding prediction or promise regarding

4  the sentence defendant will receive, except that it will be between

5  the statutory mandatory minimum and the statutory maximum.

6                        NO ADDITIONAL AGREEMENTS

7       42.   Defendant understands that, except as set forth herein,

8  there are no promises, understandings, or agreements between the USAO

9  and defendant or defendant's attorney and that no additional promise,

10  understanding, or agreement may be entered into, unless in a writing

11  signed by all parties or on the record in court.

12           PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

13       43.   The parties agree that this agreement will be considered

14  part of the record of defendant's guilty plea hearing as if the

15  entire agreement had been read into the record of the proceeding.

16  AGREED AND ACCEPTED

17  UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF
18  CALIFORNIA

19  TRACY L. WILKISON
   United States Attorney
20

21  _____                    December 21, 2021
   ALEXANDER B. SCHWAB                             Date
22  BENEDETTO L. BALDING
   Assistant United States Attorneys
23
       Guillermo Grosso                            12/21/21
24  JOSE GUILLERMO GROSSO GAMEZ                     Date
   Defendant
25
                                                   12/21/21
26  SHAUN KHOJAYAN                                  Date
   Attorney for Defendant Jose
27  Guillermo Grosso Gamez

28

                            20

1
2
3

CERTIFICATION OF DEFENDANT

4      This agreement has been read to me in Spanish, the language I
5  understand best.  I have had enough time to review and consider this
6  agreement, and I have carefully and thoroughly discussed every part
7  of it with my attorney.  I understand the terms of this agreement,
8  and I voluntarily agree to those terms.  I have discussed the
9  evidence with my attorney, and my attorney has advised me of my
10  rights, of possible pretrial motions that might be filed, of possible
11  defenses that might be asserted either prior to or at trial, of the
12  sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant
13  Sentencing Guidelines provisions, and of the consequences of entering
14  into this agreement.  No promises, inducements, or representations of
15  any kind have been made to me other than those contained in this
16  agreement.  No one has threatened or forced me in any way to enter
17  into this agreement or in an agreement signed by all parties or on
18  the record in court.  I am satisfied with the representation of my
19  attorney in this matter, and I am pleading guilty because I am guilty
20  of the charges and wish to take advantage of the promises set forth
21  in this agreement, and not for any other reason.
22

x _GUILLGRMO GROSSO_____          _12/21/21_____
JOSE GUILLERMO GROSSO GAMEZ          Date
23  Defendant
24
25

CERTIFICATION OF INTERPRETER

26      I, _ALEJANDRO FRANCO_ am fluent in the written and spoken
27  English and Spanish languages.  I accurately translated this entire
28

21

1  agreement from English into Spanish to defendant Jose Guillermo

2  Grosso Gamez on this date.

3  _Alejandro Franco_____     _12/21/2021_____

4  INTERPRETER                            Date

5

6

7                    CERTIFICATION OF DEFENDANT'S ATTORNEY

8       I am Jose Guillermo Grosso Gamez's attorney.  I have carefully

9  and thoroughly discussed every part of this agreement with my client.

   Further, I have fully advised my client of his rights, of possible
10
   pretrial motions that might be filed, of possible defenses that might
11
   be asserted either prior to or at trial, of the sentencing factors
12
   set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines
13
   provisions, and of the consequences of entering into this agreement.
14
   To my knowledge: no promises, inducements, or representations of any
15
   kind have been made to my client other than those contained in this
16
   agreement or in an agreement signed by all parties or on the record
17
   in court; no one has threatened or forced my client in any way to
18
   enter into this agreement; my client's decision to enter into this
19
   agreement is informed and voluntary; and the factual basis set forth
20
   in this agreement is sufficient to support my client's entry of
21
   guilty pleas pursuant to this agreement.
22

23  _____       _12/21/21_____

24  SHAUN KHOJAYAN                         Date
    Attorney for Defendant Jose
25  Guillermo Grosso Gamez

26

27

28

                                   22