E. MARTIN ESTRADA
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
ALEXANDER B. SCHWAB (Cal. Bar No. 283421)
Assistant United States Attorney
Deputy Chief, Major Frauds Section
BENEDETTO L. BALDING (Cal. Bar No. 244508)
Assistant United States Attorney
Deputy Chief, International Narcotics,
 Money Laundering, and Racketeering Section
     1100/1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-1259/2274
     Facsimile: (213) 894-0141
     E-mail:    alexander.schwab@usdoj.gov
                benedetto.balding@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:18-CR-00049-ODW-17 |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION REGARDING MILTON EDUARDO AQUINO CASTANEDA |
| v. | |
| MILTON EDUARDO AQUINO CASTANEDA, | Hearing Date: November 7, 2022 |
| Defendant. | Hearing Time: 10:00 a.m.<br>Location:    Ctrm. of the Hon.<br>             Otis D. Wright II |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Alexander B. Schwab and Benedetto L. Balding, hereby files its sentencing position for defendant Milton Eduardo Aquino Castaneda.

The government's position regarding sentencing is based upon the attached memorandum of points and authorities, the presentence investigation report ("PSR"), the files and records in this case, the

plea agreement, and any other evidence or argument that the Court may wish to consider at the time of sentencing.  The government respectfully requests the opportunity to supplement its position or respond to defendant as may become necessary.

Dated: October 21, 2022           Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division


         /s/
ALEXANDER B. SCHWAB
BENEDETTO L. BALDING
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

Defendant facilitated a sweeping international drug trafficking conspiracy by allowing his clothing business to be used to store cash drug proceeds as a step in the money laundering process.  While defendant's money laundering offense was a serious one, defendant is comparatively less culpable than his co-conspirators, and his personal background offers some mitigating factors.  The government therefore recommends a below-guideline sentence of five months' imprisonment, a three-year period of supervised release that includes a five-month period of home confinement, a $10,000 fine, and a $100 special assessment.

**II.  STATEMENT OF FACTS**

At his change of plea hearing, defendant admitted the following facts:

Beginning on a date no later than in or about February 2014, and continuing to January 31, 2018, in Los Angeles County, within the Central District of California, and elsewhere, including Mexico, there was an agreement between two or more persons to commit the crime of international concealment money laundering, that is, to transport, transmit, and transfer money that represented the proceeds of specified unlawful activity and which were, in fact, the proceeds of drug trafficking, in violation of 21 U.S.C. § 841(a)(1), from a place in the United States to or through a place outside the United States, namely Mexico, in order to conceal or disguise the nature, location, source, ownership, or control of those proceeds.  As a member of the conspiracy, defendant permitted his business in Los Angeles to be used to receive, store, and distribute cash to various

individuals at the direction of others, knowing that the cash represented the proceeds of some unlawful activity. By collecting and distributing bulk cash for an unknown individual using defendant's fashion district business under these circumstances, defendant was aware of a high probability that the bulk cash he was handling was ultimately being transported between the U.S and Mexico and deliberately avoided learning the truth as to that fact.

On February 20, 2014, in coded electronic communications, a co-conspirator based in Mexico ("Co-Conspirator A") asked another co-conspirator based in Mexico ("Co-Conspirator B") to provide a telephone number for a point of contact in Los Angeles who would coordinate the remission of drug proceeds from the United States to Mexico. Co-Conspirator B provided Co-Conspirator A with a telephone number of an individual associated with defendant, who owned a garment business in Los Angeles. On February 21, 2014, in coded electronic communications, Co-Conspirator A informed Co-Conspirator B that the latter's point of contact in Los Angeles (who was working with defendant) needed to be ready for the delivery of approximately $400,000 in drug proceeds.

That same day, investigators set up surveillance at defendant's garment business, where they saw a woman arrive, enter the business, and exit several hours later with two weighted black plastic bags, which she placed in her car. One of the bags contained a shoebox containing $46,765.

Later that day, agents approached defendant as he was leaving his business, and he confirmed that he was the owner. In his business, investigators found $164,205 in cash. Defendant admitted he had been collecting and distributing bulk cash for a man he did

not know and was being compensated various amounts in return, and defendant disclaimed ownership of the cash found in his business.

The $210,970 in total cash law enforcement seized on February 21, 2014, from defendant's business and the woman transporting the shoebox was in fact the proceeds of specified unlawful activity, namely, drug trafficking.

(Plea Agreement ¶ 9, at 6-7).

## III. SENTENCING GUIDELINES

### A. Base Offense Level

Consistent with the plea agreement, government submits that the following sentencing guidelines apply:

| | | |
|---|---|---|
| Base Offense Level | 8 | [USSG § 2S1.1(a)(2)] |
| Amount Laundered > $150k | +10 | [USSG § 2B1.1(b)(1)(F)] |
| § 1956 Conviction | +2 | [USSG § 2S1.1(b)(2)] |
| Acceptance of Responsibility | -3 | [USSG § 3E1.1] |

The result is a total offense level of 17, which, coupled with defendant's lack of criminal history, results in a guideline range of 24 to 30 months' imprisonment.

The PSR also applies a three-level mitigating role adjustment to defendant's total offense level. As explained in the next section, the government agrees that a two-level minor role adjustment is appropriate under the Sentencing Guidelines, which reduces defendant's guideline range to 18 to 24 months.

### B. Role in the Offense

The Ninth Circuit has recently clarified that, in assessing whether the defendant is entitled to a minor-role adjustment, the district court must engage in a three-step analysis:

3

> First, the court must identify all of the individuals for whom there is sufficient evidence of their existence and participation in the overall scheme. Second, the court must calculate a rough average level of culpability for these individuals, taking into consideration the five factors in comment 3(C) to the Mitigating Role Guideline. Third, the court must compare the defendant's culpability to that average. If the defendant is substantially less culpable than that average and meets the other criteria, he should be granted a mitigating role adjustment.

United States v. Dominguez-Caicedo, 40 F.4th 938, 960 (9th Cir. 2022) (internal quotation marks and citations omitted). In this case, the actors involved in the conduct within the scope of defendant's criminal participation are (1) the coordinators in Mexico (referred to as Co-Conspirator A and Co-Conspirator B in the factual basis; (2) their point of contact with defendant; (3) the money couriers who traveled to defendant's business; and (4) defendant himself. Of these, defendant is equal in culpability to the couriers and arguably the point of contact, but lower in culpability than the Mexico-based coordinators of the scheme. It is therefore reasonable to describe his role as "minor." See also USSG § 3B1.2(b), comment. (n.3(C)) (directing sentencing courts to assess "(i) the degree to which the defendant understood the scope and structure of the criminal activity; (ii) the degree to which the defendant participated in planning or organizing the criminal activity; (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority; (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; (v) the degree to which the defendant stood to benefit from the criminal activity").

4

**C. USSG Zones**

As described in the following section and consistent with the plea agreement, the government believes defendant warrants a downward variance equivalent to three levels, which would be the equivalent of a departure to offense level 12, which corresponds to a guideline range of 10 to 16 months in Zone C of the Sentencing Table.  A Zone C guideline range may be satisfied either through "a sentence of imprisonment" or "a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention . . . provided that at least one-half of the minimum term is satisfied by imprisonment."  USSG § 5C1.1(d). The government therefore recommends a sentence of five months' imprisonment to be followed by a three-year period of supervised release that includes five months of home confinement.

**IV. ARGUMENT**

Defendant was a member -- albeit a comparatively minor one -- of a vast international drug trafficking conspiracy that smuggled thousands of pounds of methamphetamine all over the world.  By their very nature, such criminal organizations are complex, hierarchical, and compartmentalized, with participants ranging from kingpins based in Mexico to local money launderers and drug couriers in the United States.

Defendant's sentencing guidelines already account for defendant's relative culpability in the much broader criminal network he facilitated.  Beyond his role in the offense, however, defendant's background also evinces several mitigating factors, including ongoing physical and mental health issues (PSR ¶¶ 84-87, at 13), and what has otherwise been a law-abiding and productive life, despite a difficult

childhood (PSR ¶¶ 65-80, 90-92, at 12-14).  For these reasons, the government agrees with the Probation Office that a below-guideline sentence of five months' imprisonment is appropriate in this case. That is particularly so assuming defendant's sentence is combined with five months of home confinement during defendant's period of supervision and a $10,000 fine, which accounts both for defendant's criminal conduct and his current economic circumstances.

While defendant has faced difficult personal circumstances, at the same time, international drug trafficking conspiracies and other sweeping criminal organizations frequently recruit those facing similar challenges.  To offer sufficient deterrence to such individuals, the sentence in cases like this one must be sufficiently stringent to discourage others from following a similar path.  So while a below-guideline sentence of five months' imprisonment and supervised release with five months of home confinement is appropriate in this case, a further variance would not adequately accomplish the statutory goals of sentencing set forth in § 3553(a).

**V.  CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court impose a below-guideline sentence of 5 months' imprisonment followed by a three-year period of supervised release that includes a five-month period of home confinement, a $10,000 fine, and a $100 special assessment.